IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAKE E. COLLINS, an unmarried man,<br>                Plaintiff,<br><br>    vs.<br><br>SETERUS, INC., f/k/a IBM LENDER<br>BUSINESS PROCESS SERVICES, INC.,<br><br>                Defendant. | CASE:<br><br>COMPLAINT<br>[JURY DEMAND] |

THIS ACTION is brought by JAKE E. COLLINS, an unmarried man, hereinafter "Plaintiff," by and through the undersigned counsel, against the defendant SETERUS, INC., f/k/a IBM LENDER BUSINESS PROCESS SERVICES, INC., ("Seterus"), to enforce the Regulations promulgated under the Real Estate Procedures Act ("RESPA"), specifically, 12 C.F.R. part 1024 ("Regulation X"), as well as the tort of Negligence.

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff is a resident of Washington, he owns the real property known as 16002 SE 5th Avenue, Bellevue, WA 98008 ("the Property"), and further described legally as:

Lot 1, Block 2, Lake Hills No. 4, According to the Plat thereof recorded in Volume 59

of Plats, Pages 33 and 34, in King County, Washington.

2. Defendant Seterus, operating out of Beaverton, Oregon, is a foreign corporation acting as loan servicer or default loan servicer on behalf of another relating to Plaintiff's mortgage loan account number identified as XXXX3766 ("the Loan"). The Loan is secured by the Property by the Deed of Trust dated December, 2006.

3. Seterus boasts on its website that it is "one of the nation's leading specialty loan servicing companies, is a fully integrated loan servicing company consisting of experienced, skilled professionals using leading technology" and that "Customer service is our top priority in all interactions that we have with the borrowers we serve." https://www.seterus.com/, visited June 12, 2017. The facts of this case prove that Seterus' advertised claims are false.

4. This Court has subject matter jurisdiction based on 28 U.S.C. §1331 and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367. Venue is properly in the Western District of Washington, Seattle, where the Property is located.

**COMPLIANCE WITH CONDITION PRECEDENT**

5. Plaintiff has fulfilled all conditions precedent required of him by the Loan documents prior to filing the instant lawsuit.

**FACTUAL ALLEGATIONS**

6. The Loan was originated by America's Wholesale Lender in December of 2006 as a residential loan. It was serviced by Bank of America, until April of 2015, when the mortgage servicing of the Loan was transferred to Seterus.

7. Seterus has declared that Fannie Mae is the owner of the Loan and that Seterus is contracted with Fannie Mae, to perform servicing functions. As such, Seterus is neither the Lender nor the owner of the Loan; Seterus is definitely not a party of the Deed of Trust.

BARRAZA LAW PLLC
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax 206-933-7863

8. Immediately after the servicing of the Loan was transferred to Seterus in April of 2015, Seterus immediately altered the status of the Loan. While Plaintiff had been paying his property taxes and hazard insurance on his own on a timely basis, Seterus unilaterally opened an escrow account for the Loan. In April of 2015, unbeknown to Plaintiff, Seterus made a payment for hazard insurance on the Property; neither Plaintiff nor his insurance carrier, Allstate, was given an explanation as to Seterus's action. Upon information and belief, Seterus's act of paying insurance premium on the Loan was due to Seterus's failure to verify information or data possessed by the prior servicer, Bank of America, for accuracy and completeness upon Seterus' onboarding of the Loan when servicing transfer occurred in April of 2015.

9. Despite Seterus' creation of the Escrow Account for the Loan, it failed to send Plaintiff a year-end escrow analysis for the year of 2015 when the annual computation of the Escrow Account would have been performed.

10. Seterus claims that in April of 2015, it has issued an Escrow Account Statement to Plaintiff informing him that the account had been "adjusted" and that the Escrow Account suffered from a shortage of $2,316.72. In truth, Plaintiff had never received such Escrow Account Statement in 2015. Upon information and belief, the Escrow Account Statement was generated by Seterus after the fact based on Plaintiff's strenuous objection to Seterus' action. Alternatively, the Escrow Account Statement was kept in the Loan file and was never actually mailed to Plaintiff within a reasonable amount of time following its computation. Regardless, Seterus did not provide Plaintiff with the annual escrow account statements of 2015 in a timely manner as required by federal law.

11. Seterus again failed to issue an Escrow Account Statement for the Loan for the year of 2016. Without such Statement, Plaintiff is led to believe that an escrow analysis was

COMPLAINT  3

never done or computed for 2015 or 2016.

12. As soon as Plaintiff learned of Seterus' insurance payment in April of 2015, he immediately requested Seterus to cancel the Escrow Account. He implored Seterus to verify that he had always made his payments for hazard insurance and property taxes timely on his own. Plaintiff also issued a Qualified Written Request to Seterus in June of 2015 in order to obtain accurate account information on the Loan which would shed light onto Seterus' act of opening the Escrow Account on the Loan. Seterus did not acknowledge receipt of Plaintiff's QWR in a timely manner and when it finally responded to the QWR in July of 2015, Seterus provided information about another loan secured by a different property altogether

13. Plaintiff issued another Qualified Written Request to Seterus in September of 2015 in his ongoing effort to straighten out the escrow issue. In his Request, Plaintiff also brought up the fact that Seterus failed to designate a single point of contact ("SPOC") as requested by Plaintiff. As a result, Plaintiff was forced to speak to a different employee of Seterus each time he called. No employee at Seterus had a command over the status of the Loan and there has never been any consistency or continuity to the responses given by these Seterus employees.

14. Due to Seterus's setting up escrow account on the Loan, Seterus increased Plaintiff's regular monthly payment substantially. By April of 2016, Seterus had deemed the Escrow Account to have a shortage of $8,968.62. Seterus unilaterally determined that the new monthly payment on the Loan was increased from $1773.05 to $2,219.87, effective June 1, 2016.

15. Plaintiff wrote to Seterus on June 1, 2016, to inform Seterus that he had paid his property taxes on March 4, 2016, and Seterus' payment of property taxes on March 1, 2016 had

caused a double or overpayment to the taxing authority. In the same letter, Plaintiff repeated his request for Seterus to cancel the Escrow Account (Exhibit A, Collins Letter dated June 1, 2016).

16. On July 18, 2016, Plaintiff wrote to Seterus again and directed his correspondence to Steven Compton, with whom he spoke over the phone, to contest Seterus' action. Plaintiff included with the letter a check issued to him by King County, as overpayment of property taxes because both Seterus and Plaintiff were making payment for property taxes. Plaintiff endorsed the check to Seterus and further informed Seterus that he was making payment directly to King County for the first half of 2016 (Exhibit B, Letter from Collins dated July 18, 2016).

17. At all times relevant, Plaintiff has been able and willing to pay his property taxes and hazard insurance premiums on his own outside of escrow. He has similarly never failed to comply with Seterus' request for proof of hazard insurance on the Property. Plaintiff was paying his hazard insurance premium every month via auto-debit of his bank account in the amount of $61.32. Similarly, Plaintiff was paying his property taxes to King County twice per year. Thus, there was never a need for an escrow account.

18. Seterus continues to disregard Plaintiff's repeated requests to cancel the Escrow Account. It obtained force-placed insurance upon the Property. The force-placed insurance premiums would have been higher than what Plaintiff was paying to Allstate on his own. In so doing, Seterus forced Plaintiff to make, in addition to his regular monthly payments consisting of principal and interest, certain lump sum payments to Seterus to satisfy the so-called escrow deficiency or escrow shortage. This is because Plaintiff did not know whether and when Seterus would honor his request to cancel the Escrow Account. Plaintiff felt it would be safest to keep making his regular mortgage payments on time and wait for Seterus to eventually give him a

COMPLAINT 5

plausible accounting.

19. At all times during the life of this loan, Plaintiff has been making his regular mortgage payments. For the past year, from June 2016, Plaintiff has made 12 consecutive monthly payments, never more than 30 days late, totaling $21,986.62. Yet, once Seterus forced the Escrow Account on the Loan, it declared the Loan to be in default because of an escrow shortage.

20. Seterus continued to accept both the regular principal and interest payments and escrow payments from Plaintiff but did not apply them in a timely manner. Instead, Seterus "parked" some of these funds in a suspense account which caused the Loan's delinquent status to become more serious. Seterus failed to inform Plaintiff at the time that it placed funds in the suspense or unapplied account but sent Plaintiff various correspondence, including certain "notice of debt" declaring the Loan to be in default and threatened acceleration of the Loan and potential foreclosure.

21. In 2017, Seterus inexplicably returned payments made by Plaintiff without any plausible explanation (Exhibit C, Returned Uncashed Check). This caused the Loan to go into a "free fall" regarding the delinquent amount. Plaintiff's monthly payments to Seterus had been applied to late fees and other default-related fees. For example, in June of 2016, Seterus' employee/agent Steven Compton informed Plaintiff that Seterus had taken Plaintiff's regular mortgage payments and applied them toward late fees in the amount of $1773.05. As a result, a substantial amount of Plaintiff's payments have been applied to the self-imposed late fees instead of going toward principal and interest.

22. Upon information and belief, Seterus' declaration of delinquency and default enabled Seterus to impose default-related fees on the Loan. These fees include, but are not

limited to, property inspection or property preservation and Broker's Price Opinion. Even though Seterus has declared the Loan to be in default as of 2016, and despite Plaintiff's repeated attempts to get a full accounting of his Loan, Seterus never provided Plaintiff with an accounting for default-related fees it imposed against the Loan.

23. Seterus' action of opening the Escrow Account and wrongful application of Plaintiff's payments caused late fees and additional interests to accrue on the Loan when the Loan was in fact not in default. Thus, these fees were/are completely unwarranted. Seterus' action has inflated the total amount due and owing on the Loan at any given time, including when Plaintiff needs to sell the Subject Property and pay off the underlying Loan.

24. In an unsigned letter dated May 31, 2017, Seterus advised that Plaintiff owes a "Current Balance" in the amount of $15,189.06, as well as a negative escrow balance of $2,756.25. Seterus continues to suspend or hold $1449.14 of Plaintiff's money and not applied it towards the Current Balance, the Negative Escrow, or the Unpaid Principal Balance.

25. In the same letter, Seterus takes the position that the Loan is "contractually delinquent for December 1, 2016, and all subsequent installments." Seterus also admits that interests continue to accrue on the "arrears" and the payoff on the Loan would consist of not only the principal balance but unpaid interests and escrow shortage in the amount of $2756.25.

26. Most importantly, Seterus advised that the Loan "went into default on June 2, 2016" and that "As a result of this delinquency, a demand letter was issued and the cure period has expired." Seterus informed Plaintiff that "your loan balance has been accelerated and is now due in full." (Exhibit D, Seterus May 31, 2017 letter).

27. In opening the Escrow Account for the Loan, Seterus, as a loan servicer, is required under RESPA and Regulation X, to perform an accurate annual escrow analysis to

determine the installment payment amount. Following the escrow analysis, Seterus must provide an escrow statement to Plaintiff as the borrower.

28. Under 12 C.F.R. §1024.17(c)(3), Seterus is obligated to conduct annual escrow analyses at the completion of the Escrow Account computation year to determine the Loan's monthly escrow account payments for the next computation year. Seterus is further obligated to provide Plaintiff with the annual escrow account statements within 30 days of the completion of the account computation. Said annual escrow account statements must include, among other things, an account history and a projection of the activity in the account for the next year, pursuant to 12 C.F.R. §1024.17(i).

29. Plaintiff did not fail to provide Seterus with documentation that his home is insured. In fact, Seterus knew that the Subject Property had been insured by Allstate. Yet, Seterus force-placed insurance on the Property anyway. Force-placed insurance premiums are typically much higher than premiums paid by the borrower for an insurance policy. Often, the force-placed vendor and the servicer are in an agreement that the vendor provides force-placed insurance policies to the servicer.

30. At all times relevant herein, Plaintiff's payments to the taxing authority and to the property insurer were never more than 30 days overdue. Thus, Seterus was never required to set up an escrow account and to advance any payment to pay either the real estate taxes or the insurance premium related to the Loan.

31. Seterus' failure to comply with RESPA and Regulation X has occurred and continues to occur within the statutory period of three years. 12 U.S.C. 2605.

32. For the past two and a half years, Plaintiff has made dozens and dozens of calls to Seterus' customer service phone line in order to get a handle on his Loan Account. Plaintiff has

1  spent hundreds of hours writing to Seterus as well as compiling supporting documents for these
2  letters and requests to be sent to Seterus in his relentless effort to obtain a full accounting of the
3  Loan and to correct the errors committed by Seterus to no avail.

4      33. All in all, Seterus has sent Plaintiff a total of two hundred and thirty-nine (239)
5  letters and notices during a twenty-seven (27) month period. These letters and notices contain
6  misrepresentations about the Loan and threats to foreclose on Plaintiff's property on a regular
7  and continuous basis. These letters and notices are not only evidence of Seterus' ruthless and
8  unfounded debt collection campaign against Plaintiff but also proof that Seterus gives no
9  consideration whatsoever to its treatment of Plaintiff as a human being who happens to be one of
10 its customers. Seterus' conduct toward Plaintiff renders its advertised claims on the worldwide
11 web completely bogus.

12     34. Plaintiff has spent approximately two hundred (200) hours of his personal time
13 trying to work with Seterus within the past two and a half years. These are hours that Plaintiff
14 has taken to obtain a full accounting of the Loan and to convince Seterus that the Loan was never
15 delinquent. This is time that Plaintiff could have and would have devoted to his business
16 whereupon he would earn a good income. Additionally, the experience Plaintiff has with Seterus
17 has rendered him exasperated, angry, frustrated, stressed out, and it also has affected his health
18 negatively. Plaintiff has in fact developed certain physical conditions including persistent
19 headaches which recur daily. He has also suffered from constant indigestion caused by anxiety
20 and depression and loss of sleep. Additionally, Plaintiff has experienced depression, unwarranted
21 stress and anxiety based on the uncertainties of his Loan and fear of losing his Property to
22 foreclosure. Plaintiff's psychological and physical symptoms occurred or have been aggravated
23 during the past twenty-seven (27) months that he has been dealing with Seterus.

24

COMPLAINT           9

BARRAZA LAW PLLC
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax 206-933-7863

35. Seterus' action in setting up an unwarranted Escrow Account and manipulating such Escrow Account to induce default on the Loan has also injured Plaintiff in that its action has diminished the value of Plaintiff's Property. When Plaintiff sells the Property, he would have to pay the inflated amount to pay Seterus off and the equity he realizes from such sale would be reduced by the same amount of the inflation. Plaintiff has also suffered credit damage as Seterus has been reporting the Loan as late, delinquent or ripe for foreclosure during the past twenty-seven months.

36. Plaintiff has incurred expenses in trying to get Seterus to correct the errors and restore the Loan to current status. These include office supply, copy and fax charges, delivery and mailing costs, mileage and parking. Plaintiff has also incurred attorney's fees as he has needed to consult with one or more lawyers about the Loan and what Seterus has done outside of filing of the instant lawsuit.

## COUNT ONE. SETERUS VIOLATED RESPA, REGULATION X

37. Plaintiff re-alleges and incorporates by reference all the foregoing factual allegations for the following causes of action.

38. Plaintiff has a private cause of action against Seterus. 12 U.S.C.§2605(f) states that, in the case of an action by an individual, "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure" in an amount equal to the sum of (1) any actual damages to the borrower as a result of the failure; and (2) any additional damages up to $2,000, as the court may allow, in the case of a pattern or practice of noncompliance. 12 U.S.C. § 2605(f)(1)(A)-(B).

39. RESPA and Regulation X apply to "federally related mortgage loans." 12 C.F.R. § 1024.2(b). They apply to conduct of "servicers," regarding the administration of borrowers'

escrow accounts, error resolution procedures, force-placed insurance, general servicing policies, procedures and requirements, and loss mitigation procedures. 12 C.F.R. § 1024.2(b); 2 C.F.R. §§ 1024.34, 1024.35, 1024.37, 1024.38, and 1024.41.

40.     Seterus is a "servicer" under Regulation X. 12 C.F.R. § 1024.2(b). When Seterus took over the Loan in April of 2015, it was then a "new servicer." The Regulation requires that, "[i]f the new servicer changes either the monthly payment amount or the accounting method ... then the new servicer shall provide the borrower with an initial escrow account statement within 60 days of the date of servicing transfer." 24 C.F.R. § 3500.17(e)(1). By unilaterally implementing an Escrow Account on the Loan, Seterus changed both the monthly payment amount as well as the accounting method by which the monthly payment amount was calculated, Seterus violated the Regulation by its failure to provide Plaintiff with such initial escrow account statement within 60 days of the date of servicing transfer. The earliest escrow analysis that Plaintiff received was in 2017 when he repeatedly requested account information from Seterus.

41.     Effective January 10, 2014, as servicer, Seterus is obligated to but failed to comply with the following requirements:

a.     conduct annual escrow analyses for borrowers at the completion of the escrow account computation year to determine the borrower's monthly escrow account payments for the next computation year, pursuant to 12 C.F.R. § 1024.17(c)(3);

b.     refund escrow surpluses to borrowers within thirty (30) days from the date of the escrow account analysis to the extent the surplus is greater than or equal to $50.00, pursuant to 12 C.F.R. § 1024.17(f)(2)(i); and

c.     provide borrowers with annual escrow account statements within 30 days of the completion of the escrow account computation year, and the annual escrow

account statement must include, among other things, an account history and a projection of the activity in the account for the next year, pursuant to 12 C.F.R. §1024.17(i).

42. Most importantly, RESPA and Regulation X prohibit a servicer from collecting escrow shortages or other deficiencies when a shortage or deficiency does not exist. 12 C.F.R. § 1024.17(f)(3) and (4).

43. Seterus collected the alleged escrow shortages from Plaintiff when a shortage or deficiency did not exist starting in 2015. In so doing, Seterus violated 12 C.F.R. §1024.17(f)(3) and (4).

44. Seterus failed to provide Plaintiff with annual escrow account statements within 30 days of the completion of the escrow account computation years, including 2016 and 2015. Said failure violated 12 C.F.R §1024.17(i).

45. Seterus violated 12 U.S.C. §2605(k) which prohibits a servicer from:

> (A) obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance;
> *****
> (C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;

46. Seterus had obtained force-placed hazard insurance on the Loan when there was no reasonable basis to believe that Plaintiff had failed to pay property insurance on his own to Allstate in a timely manner. When Plaintiff inquired and requested Seterus to correct the error inherent in the Escrow Account Seterus had set up, Seterus refused Plaintiff's requests. Instead, Seterus has taken the additional steps to accelerate the Loan and to make demand for payment in full. Seterus' action violated RESPA, Regulation X.

## COUNT TWO. NEGLIGENCE

47. As loan servicer, Seterus owed Plaintiff a duty of care as described under RESPA, including but not limited to the duty to determine accurately not only the estimates of escrow expenses, but also of payments made by Plaintiff to apply toward principal, interest and escrow items. Seterus breached this duty by incorrectly and negligently determined an escrow account was necessary and by advancing Plaintiff's regular principle and interest payments for escrow when Plaintiff was never more than 30 days late on these payments as were due to the taxing authority and insurance company, Seterus has breached this duty of care.

48. Alternatively, as servicer, Seterus owes Plaintiff a tort duty to use reasonable care in servicing the Loan. Given the relationship between Seterus and Plaintiff and the broad discretion that Seterus has regarding the Loan and the encumbered Property, and the gravity of foreseeable harm to Plaintiff, Seterus has failed to exercise such reasonable care.  Seterus has breached this duty of reasonable care by arbitrarily setting up an escrow account, by making payment to the taxing authority without notifying Plaintiff causing a double payment, by taking Plaintiff's payments but suspending them while allowing interests and other default-related fees to accrue on the Loan. Seterus has breached this duty of reasonable care by returning payments to Plaintiff rather than applying them timely and appropriately to reduce the deficiency which was created by Seterus.

49. Seterus' breach proximately caused the Loan to be inflated unnecessary by accrued interest, late fee, and default-related fees.

50. As loan servicer, Seterus has total control over how it applies payments made by Plaintiff toward the Loan. Seterus held the sole discretion as to whether an escrow account should be established as well as whether it should advance payments to the taxing authority and

property insurance company. While this duty is not of a fiduciary, under the circumstances of this case, where Plaintiff repeatedly inquired and pleaded with Seterus to correct what appears to be a clear error, and where it would have taken minimal effort on the part of Seterus to correct said error, Seterus in fact took additional actions to further damage the Plaintiff.

51. Seterus' negligence has caused Plaintiff to lose hundreds of hours of his life in his effort to straighten out problems associated with the Loan. These are hours that Plaintiff could have and would have devoted to his business whereupon he would earn a good income. The experience Plaintiff has with Seterus has rendered him exasperated, angry, frustrated, stressed out, and it also has affected his health negatively. Plaintiff has in fact developed certain physical conditions including persistent headaches which recur daily. He has suffered from indigestion caused by anxiety and depression and loss of sleep. Additionally, Plaintiff has experienced depression, unwarranted stress and anxiety based on the uncertainties of his Loan and fear of losing his Property to foreclosure. Plaintiff's psychological and physical symptoms occurred or have been aggravated during the past twenty-seven (27) months that he has been dealing with Seterus.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, pursuant to RESPA, 12 U.S.C. §2605 (g), Regulation X, and the Court's own powers to grant legal or equitable relief, request that the Court:

(A) Compel Seterus to provide Plaintiff with a full accounting of the Loan, effective the day Seterus took over servicing in 2015;

(B) Compel Seterus to take remedial actions and credit the Loan or refund Plaintiff of all amounts unlawfully charged, collected, or suspended;

BARRAZA LAW PLLC
14245-F AMBAUM BLVD SW
SEATTLE WA 98166
Tel. 206-933-7861/Fax 206-933-7863

(C) Award actual and consequential damages to Plaintiff as a result of Seterus' conduct;

(D) Award statutory damages to Plaintiff as provided by RESPA and Regulation X;

(E) Award damages based on the tort of Negligence, including emotional distress;

(F) And for any and all other relief the Court deems just.

DATED this ___ of June, 2017.

BARRAZA LAW, PLLC

*/s/ V. Omar Barraza*

VICENTE OMAR BARRAZA, WSBA 43589
Counsel for Plaintiff
14245-F Ambaum Blvd SW, Seattle WA 98166
206-933-7861 Fax 206-933-7863