UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAKE E. COLLINS, an unmarried man,<br><br>              Plaintiff,<br><br>    v.<br><br>SETERUS, INC., f/k/a IBM LENDER BUSINESS PROCESS SERVICES, INC.<br><br>              Defendant. | CASE NO. C17-0943-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 22). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

## I.     BACKGROUND

Plaintiff owned real property located at 16002 SE 5th Avenue, Bellevue, WA 98008 (the "Property"). (Dkt. No. 20 at 2.) Defendant has a contract with the Federal National Mortgage Association ("Fannie Mae") to perform servicing functions, including collection on delinquent mortgage debts on Fannie Mae's behalf. (*Id*.) Defendant acted as a loan servicer or default loan servicer of Plaintiff's mortgage loan account (the "Loan"). (*Id*. at 2–3.) Defendant is not the lender, the owner of the Loan, or a party to the Deed of Trust. (*Id*. at 3.)

In December 2006, the Loan was originated by America's Wholesale Lender as a residential loan and secured by the Property via a Deed of Trust signed by Plaintiff. (*Id*.) Bank of America serviced the Loan until April 2015, when mortgage servicing was transferred to Defendant. (*Id*. at 3.) At the time the Loan was transferred, Plaintiff was making monthly principal and interest payments totaling $1,541.10, and was two months behind in his payments. (*Id*.) Plaintiff was timely paying his property taxes and hazard insurance for the Property, provided by Allstate. (*Id*. at 4.)

After the Loan was transferred, Defendant made a payment of $693.84 to Allstate for the hazard insurance on the Property. (*Id*.; *see* Dkt. No. 1-1 at 24.)[1] Defendant did not provide Plaintiff or Allstate an explanation for the payment. (Dkt. No. 20 at 4.)[2] Defendant also unilaterally opened an escrow account for the Loan, although Bank of America had terminated the need for an escrow account. (*Id*.) Plaintiff alleges that Defendant's act in paying the insurance premium and setting up an escrow account was due to its failure to verify information or data possessed by Bank of America, and its failure to ensure accuracy and completeness of the Loan's information. (*Id*.)

When Plaintiff learned of Defendant's payment to Allstate, he requested that Defendant cancel the escrow account and verify that Plaintiff had always timely paid for hazard insurance and property taxes. (*Id*.) In June 2015, Plaintiff issued a Qualified Written Request ("QWR")

---

[1] Plaintiff attached a number of documents as exhibits to his initial complaint filed in this matter. (*See* Dkt. No. 1-1.) "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id*. As the documents attached to Plaintiff's complaint concern the factual allegations underlying several of Plaintiff's claims and neither party questions their authenticity, the Court will consider them in deciding Defendant's motion to dismiss.

[2] Defendant apparently considered its payment to Allstate an advancement of funds, and later moved "the advanced funds into escrow as a deficiency for the apparent purpose of collecting the funds it had advanced." (*See* Dkt. No. 22 at 2.)

seeking to obtain account information on the Loan and to clarify why Defendant had opened the escrow account; Defendant's response was delayed until July 2015, and ultimately "provided information about another loan secured by a different property altogether." (*Id.*) Defendant also issued Plaintiff a Notice of Pre-Foreclosure Options, dated June 17, 2015. (*Id.* at 5.) Plaintiff issued a second QWR in September 2015 about the escrow issue and Defendant's failure to designate a single point of contact; Defendant did not timely or properly respond to the second QWR. (*Id.* at 4–5.)

In a letter dated June 7, 2016, Plaintiff notified Defendant that Plaintiff's local county tax office had returned his real estate tax payment, paid on March 4, 2016, because Defendant had already made a tax payment to Plaintiff's property account without Plaintiff's knowledge, authorization, or approval on March 1. (*Id.* at 5; Dkt. No. 1-1 at 63, 65.) Plaintiff enclosed an overpayment check for $5,092.68. (Dkt. No. 1-1 at 63.)[3] Plaintiff also noted that Defendant had still failed to cancel the escrow account as requested by Plaintiff a year ago, and Plaintiff reiterated his request. (*Id.*)

In a letter dated July 18, 2016, Plaintiff again contested Defendant's payment of Plaintiff's real property taxes, and enclosed a refund check sent by King County to Plaintiff, endorsed to Defendant. (Dkt. No. 20 at 5; *see* Dkt. No. 1-1 at 57–58.) Plaintiff notified Defendant that he would pay his own taxes for the first half of 2016. (Dkt. No. 1-1 at 58.) Plaintiff's letter also mentioned that Defendant's employee told Plaintiff that Defendant did not have a record of Plaintiff's June 7, 2016 letter, which had caused Plaintiff additional damages from the escrow account. (*Id.* at 57.)

Plaintiff asserts that Defendant should never have created the escrow account, in light of

---

[3] Defendant asserts that "Plaintiff remitted [the tax refund] to Defendant and [it was] applied to his account." (Dkt. No. 22 at 2) (citing Dkt. No. 1-1 at 70). It appears that Defendant disbursed $4,208.83 from the escrow account on April 1, 2016 "to satisfy delinquent King County property taxes." (Dkt. No. 22 at 2) (citing Dkt. No. 1-1 at 70.) Defendant also allegedly disbursed $5,092.68 from the escrow account on February 19, 2016 "for the satisfaction of [Plaintiff's] King County property taxes." (*See* Dkt. No. 1-1 at 71.)

Plaintiff's history of timely payment of his property taxes and hazard insurance. (Dkt. No. 20 at 5.) Plaintiff further asserts that Defendant failed to send Plaintiff various required documents, including year-end escrow analyses and escrow account statements for 2015 and 2016. (*Id*. at 5–6.) Plaintiff claims that this evidences Defendant's failure to conduct annual escrow accounting, which has resulted in inaccuracies in the overall accounting of the Loan. (*Id*. at 6.) Plaintiff asserts that Defendant's establishing of the escrow account on the Loan increased Plaintiff's regular monthly payments from $1,773.05 to $2,219.87, effective from July 1, 2016 to when Plaintiff sold the Property in August 2017, and that Defendant ignored Plaintiff's repeated requests to cancel the escrow account. (*Id*.)

Separately, Defendant obtained force-placed insurance on the Property, which carried significantly higher premiums than the insurance Plaintiff had through Allstate. (*Id*.) Defendant demanded that Plaintiff make certain lump sum payments to Defendant "to satisfy the so-called escrow deficiency or escrow shortage." (*Id*.) Plaintiff asserts that the force-placed insurance "caused an inflation of the amount due and owing on the Loan," as the premiums were higher than Allstate's insurance and provided less coverage. (*Id*. at 7.)

Over the course of the Loan, Plaintiff made regular mortgage payments that were never more than 30 days late. (*Id*.) Despite Plaintiff's regular payments, Defendant "parked" some of Plaintiff's principal and interest payments in a suspense account, and thereby caused the Loan's delinquent status to worsen. (*Id*.) Rather than notify Plaintiff that Defendant had placed the funds in the suspense or unapplied account, Defendant sent Plaintiff various notices of debt or default, which also threatened acceleration of the Loan or foreclosure. (*Id*.)

In May and June 2017, Defendant returned Plaintiff's monthly payments because there was "a foreclosure proceeding in progress"; Plaintiff had not been notified of any foreclosure proceedings against the Property. (*Id*.) The return of Plaintiff's monthly payments caused the Loan to go into "free fall." (*Id*. at 8.) Further, Defendant had previously been applying Plaintiff's monthly payments to late fees and other default-related fees, contrary to the terms of the

promissory note and Deed of Trust. (*Id*.)

In 2017, Defendant sent Plaintiff a Notice of Pre-Foreclosure Options dated June 17, 2017. (*Id*.) Defendant did not otherwise provide Plaintiff with periodic or monthly statements regarding the Loan in 2017. (*Id*.) Defendant issued an account statement dated July 13, 2017, which stated that Plaintiff's "Past Due Payment(s)" were $18,962.92, "Total Charges" were $1,224.93, and "Suspense" or "Credit" were $1,448.14. (*Id*.)

On August 9, 2017, due to the "tremendous threat of foreclosure by Defendant," Plaintiff sold the Property to a third party. (*Id*.) Pursuant to Defendant's payoff demand, Plaintiff paid Defendant a total of $406,619.23, which included all outstanding interest, late fees, default fees, and foreclosure fees. (*Id*.) Weeks after the Property had been sold and Plaintiff had paid off the Loan in full, Defendant sent Plaintiff a letter indicating that it had received Plaintiff's payment of $1,862.32, and notifying Plaintiff that Defendant's acceptance of the payment did not waive its creditor's rights relative to the Loan. (*Id*. at 8–9.) Plaintiff asserts that the $1,862.32 was an overpayment, but Defendant did not refund it. (*Id*. at 9.)

Plaintiff filed suit against Defendant on June 19, 2017 for violation of Regulation X of the Real Estate Procedures Act (RESPA), 12 C.F.R. § 1024; violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e, 1692f; violation of the Washington Consumer Protection Act (CPA), Wash. Rev. Code § 19.86; negligence; and negligent misrepresentation. (Dkt. No. 1.)[4] Plaintiff seeks damages for emotional distress, diminution in the value of the Property, credit damage, and actual costs and attorney fees. (*Id*. at 13, 25–26.) Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 22.)

//
//

---

[4] Plaintiff amended his complaint on November 11, 2018 as a matter of right, pursuant to Federal Rule of Civil Procedure 15(a). (Dkt. No. 20.)

## II. DISCUSSION

### A. Motion to Dismiss Legal Standard

The Court may dismiss a complaint that "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. A plaintiff is obligated to provide grounds for his or her entitlement to relief that amount to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

### B. Violations of Regulation X of RESPA

Defendant's arguments for dismissal of Plaintiff's Regulation X claims focus exclusively on Defendant's payment of the hazard insurance premium to Allstate. (*See* Dkt. No. 22 at 4–5.) Defendant contends that it is statutorily nonliable for the "insurance error," as it advanced the payment in the erroneous belief that Plaintiff was not current on his hazard insurance premiums, but corrected any error because it did not advance future premiums and Plaintiff has not alleged that he had to pay Allstate more than he otherwise would have. (*Id.*)

An individual borrower may recover damages for violations of RESPA's provisions. 12 U.S.C. § 2605(f)(1)(A)–(B). Under Regulation X, "[s]ervicer means a person responsible for the servicing of a federally related mortgage loan . . . ." 12 C.F.R. § 1024.2(b). Regulation X applies to the conduct of servicers, including making timely escrow payments, resolving errors, responding to written requests for information, and force-placing insurance. *See, e.g.*, 12 C.F.R. §§ 1204.34–1204.37. Under RESPA, a servicer is not liable if:

> within 60 days after discovering an error . . . and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

12 U.S.C. § 2605(f)(4).

Contrary to Defendant's arguments, Plaintiff's Regulation X claims are not premised on Defendant's payment to Allstate for Plaintiff's existing hazard insurance on the Property. More accurately, Plaintiff has cited Defendant's payment of the insurance premium as indicative of Defendant's "failure to verify information or data possessed by the prior servicer" and alleged that Defendant unilaterally opened an escrow account for the Loan because it advanced the insurance premium payment. (Dkt. No. 20 at 4.) Plaintiff further alleges that Defendant's erroneous belief that Plaintiff was not paying his hazard insurance premiums caused Defendant to force-place hazard insurance on the Property which had premiums that were higher than Allstate's provided hazard insurance. (*Id*. at 6–7.) Plaintiff's many alleged causes of action arising under Regulation X focus on Defendant's subsequent management of the escrow account, including failing to conduct required escrow analyses, refund surpluses, and provide annual statements, as well as imposing insurance charges that were not bona fide and reasonable. (*See* Dkt. No. 20 at 13–17.) Notably absent is a Regulation X claim premised on any overpayment to Allstate following Defendant's advancement of the hazard insurance premium. (*See id*.) Therefore, Defendant's contention that it is statutorily nonliable for its erroneous payment to Allstate fails to address Plaintiff's Regulation X claims. (*Compare id*., *with* Dkt. No. 22 at 5.) Therefore, Defendant's motion to dismiss is DENIED on this ground.[5]

---

[5] Defendant's reply in support of its motion to dismiss discusses its advance payment of Plaintiff's real estate taxes to explain Plaintiff's increased Loan payments. (*See* Dkt. No. 22 at 2–3.) Defendant's contentions still do not address the many grounds for violation of Regulation X raised by Plaintiff's complaint. (*Compare id*., *with* Dkt. No. 20 at 13–17.)

**C.     Negligence and Negligent Misrepresentation Claims**

Plaintiff asserts that Defendant breached various duties it owed Plaintiff under RESPA and as a servicer by "incorrectly and negligently" managing the escrow account and by failing to exercise reasonable care. (Dkt. No. 20 at 17–18.) Plaintiff also brings a claim of negligent misrepresentation against Defendant, alleging that Defendant supplied false information in guiding Plaintiff's business transactions and thereby failed to exercise reasonable care or competence in obtaining or communicating the information. (*Id*. at 19.) Plaintiff seeks monetary damages, such as accrued interest, late fees, and default-related fees, and emotional distress damages. (*Id*. at 18–20.) Defendant argues that Plaintiff's claims of negligence and negligent misrepresentation must be dismissed for lack of recoverable damages. (Dkt. No. 22 at 5–8.) The Court addresses each of Defendant's arguments in turn.

1. *Emotional Distress Damages*

Defendant contends that Plaintiff's claims for noneconomic damages fail because such damages cannot be recovered for claims of negligence or negligent misrepresentation. (*Id*. at 7–8.) In Washington, recovery of emotional distress damages is generally limited to intentional torts. *See White River Estates v. Hiltbruner*, 953 P.2d 796, 798–99 (Wash. 1998) (gathering and discussing cases). Neither Plaintiff's negligence claim nor negligent misrepresentation claim assert that Defendant committed an intentional tort against Plaintiff. (*See* Dkt. No. 20 at 17–20.) Therefore, Defendant's motion to dismiss is GRANTED as to Plaintiff's claims for damages premised on emotional distress.

2. *Negligent Misrepresentation Damages*

Defendant contends that Plaintiff has failed to allege "pecuniary loss" required to support his claim for negligent misrepresentation. (Dkt. No. 22 at 6.) Claims for "damages for negligent misrepresentation are limited to 'those necessary to compensate the plaintiff for the pecuniary loss to him for which the misrepresentation is the legal cause.'" *Janda v. Brier Realty*, 984 P.2d 412, 415 (Wash. Ct. App. 1999) (quoting Restatement (Second) of Torts § 552B). These include

"(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." *Id*.

In his claim for damages for Defendant's negligent misrepresentation, Plaintiff asserts that Defendant "caused the Loan to be in default . . . ." (Dkt. No. 20 at 20.) This section of the complaint does not specify the pecuniary losses that Plaintiff incurred as a result. (*See id.*) But Plaintiff alleges such damages elsewhere in the complaint; for example, Plaintiff alleges that Defendant "allow[ed] interests and other default-related fees to accrue on the loan." (*See id.* at 18.) Therefore, Plaintiff has provided sufficient factual allegations to plead a plausible claim for pecuniary loss due to Defendant's negligent misrepresentation.[6] Defendant's motion to dismiss is DENIED on this ground.

### 3. *Negligence Damages – Economic Loss Rule*

Defendant contends that "Plaintiff's alleged pecuniary losses as consequential damages are not recoverable in tort because the claim is barred by the economic loss rule." (Dkt. No. 22 at 6.) The economic loss rule, also known as the independent duty doctrine, "applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief." *Alejandre v. Bull*, 153 P.3d 864, 867 (Wash. 2007); *see Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 243 P.3d 521, 526 (Wash. 2010). The Washington Supreme Court has specified that a plaintiff may still recover in tort if the court decides as a matter of law that the injury is traceable to a breach of a tort duty that arises independently from the terms of the contract at issue; in other words, if "the defendant was under an independent tort duty." *Affiliated FM Ins. Co.*, 243 P.3d at 526; *see also Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1261–62 (Wash. 2010).

---

[6] The Court notes that, in the context of his negligent misrepresentation claim, Plaintiff has not alleged that his "severe emotional distress" and related physical symptomology has resulted in a corresponding pecuniary loss that could arguably be recoverable. (*See* Dkt. No. 20 at 20.)

For the independent duty doctrine to apply, there must be a contractual relationship between the parties from which the plaintiff's claimed injuries arise. *See Alejandre*, 153 P.3d at 867; *Affiliated FM Ins. Co.*, 243 P.3d at 526; *Eastwood*, 241 P.3d at 1261–62. Plaintiff alleges that Fannie Mae is the owner of the Loan, and that Defendant "is neither the Lender nor the owner of the Plaintiff's Loan; [Defendant] is definitely not a party of the Deed of Trust; [Defendant] is a debt collector on behalf of Fannie Mae" or a default servicer. (Dkt. No. 20 at 3.) (*Id*.) The amended complaint does not contain other factual allegations concerning a contractual relationship between Plaintiff and Defendant. (*See generally id*.) Absent such allegations, the Court cannot evaluate whether Plaintiff's claims of negligence and negligent misrepresentation arise from an independent tort duty as a matter of law at this stage in the litigation. *See Affiliated FM Ins. Co.*, 243 P.3d at 526. Although Defendant argues that it is a beneficiary of Plaintiff's Deed of Trust and is the holder of the promissory note in this case, those facts are not derived from the complaint or supported by evidence presently before the Court. (*See generally* Dkt. No. 20; *see also* Dkt. No. 1-1) (exhibits attached to Plaintiff's original complaint). Similarly, Defendant's contention that Washington has recognized the relationship between Fannie Mae and its servicers is not supported by citation to factual allegations or evidence the Court may consider for the present motion to dismiss. (*See* Dkt. No. 22 at 7) (citing *Brown v. Wash. State Dep't of Commerce*, 359 P.3d 771, 777 (Wash. 2015)).

Further, a plausible inference may be drawn that Plaintiff's negligence and negligent misrepresentation claims arise from tort duties independent of any contractual relationship between the parties. For example, Plaintiff has alleged that Defendant breached its duty of reasonable care as a servicer by making payments to King County's taxing authority without notifying Plaintiff and by force-placing insurance on the Property when Plaintiff was timely paying for hazard insurance. (Dkt. No. 20 at 18.) Similarly, Plaintiff's negligent misrepresentation claim alleges that Defendant was negligent in obtaining and communicating false information to Plaintiff after it failed to verify information from Bank of America in 2015.

(*Id.* at 19.) Such duties may plausibly arise independent of the specific duties allocated to the parties under a given contract, and the Court cannot make such a determination based on the complaint's factual allegations. Therefore, Defendant's motion to dismiss is DENIED on this ground.

### D. Violation of the FDCPA

Defendant moves for dismissal of Plaintiff's claims for violation of the FDCPA as time-barred. (Dkt. No. 22 at 8–9.) A claim arising under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiff filed his initial complaint on June 19, 2017. (Dkt. No. 1.) Defendant contends that its advance of the insurance premiums in July 2015 and opening of the escrow account in January 2016 both occurred outside of the FDCPA's one-year statute of limitations. (Dkt. No. 22 at 8–9.) As both events occurred more than one year before Plaintiff filed his complaint on June 19, 2017, Defendant's motion to dismiss is GRANTED as to these two claims. *See* 15 U.S.C. § 1692k(d).[7]

Defendant further argues that "[a]ll the plaintiff's theories of violations under the FDCPA are predicated on the improper opening of the escrow account and the advance of funds for insurance premiums," and thus must be dismissed as time-barred. (Dkt. No. 22 at 9.) This is overbroad. Plaintiff has alleged that Defendant continuously violated the FDCPA from when it became the servicer of the Loan in 2015 until Plaintiff sold the Property and discharged the Loan in August 2017. (*See* Dkt. No. 20 at 21–24.) Plaintiff's FDCPA claims arising within one year of

---

[7] Plaintiff appears to briefly argue that the discovery rule, under which "the statute of limitations for a particular claim does not accrue until that claim is discovered, or could have been discovered with reasonable diligence, by the plaintiff," applies to his time-barred FDCPA claims. *Gabelli v. Sec. & Exch. Comm'n*, 568 U.S. 442, 447 (2013) (citation omitted); *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009); (*see* Dkt. No. 25 at 5). But Plaintiff does not support his reference to the discovery rule with substantive argument or factual allegations; in fact, the complaint states that, "As soon as Plaintiff learned of [Defendant's] insurance payment in April of 2015, he immediately requested [Defendant] to cancel the Escrow Account." (Dkt. No. 20 at 4.) Therefore, Plaintiff has not established that the discovery rule applies and precludes dismissal of Plaintiff's time-barred FDCPA claims.

the filing of the complaint in this matter are not barred by the FDCPA's statute of limitations, even if arising from Defendant's conduct regarding the underlying escrow account or insurance payment. Therefore, Defendant's motion to dismiss is DENIED as to Plaintiff's FDCPA claims arising within one year of the filing of the complaint in this matter. Going forward, Plaintiff will bear the burden of establishing which of his remaining FDCPA claims arose within one year of the filing of the complaint.

### E. Private CPA Claims

Defendant moves for dismissal of Plaintiff's CPA claim for failure to allege a public interest impact. (Dkt. No. 22 at 9.) To state a claim for a violation of the CPA, a plaintiff must allege: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) which impacts the public interest; and (4) an injury to business or property; (5) which was caused by the deceptive act or practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). "The failure to establish any of the elements is fatal to a CPA claim." *Johnson v. Camp Auto., Inc.*, 199 P.3d 491, 493 (Wash. Ct. App. 2009).

"In a private action, a plaintiff can establish that the lawsuit would serve the public interest by showing a likelihood that other plaintiffs have been or will be injured in the same fashion." *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1108 (Wash. 2015). In assessing whether a complaint satisfies the public interest element of a CPA claim, the Court considers four non-dispositive factors: "(1) whether the defendant committed the alleged acts in the course of his/her business, (2) whether the defendant advertised to the public in general, (3) whether the defendant actively solicited this particular plaintiff, and (4) whether the plaintiff and defendant have unequal bargaining positions." *Id.*

Plaintiff's private CPA violation claims arise out of Defendant's conduct in the course of its business, such as failing to verify the Loan's information when it became the Loan's servicer, creating an escrow account for the Loan, failing to provide required documents related to the escrow account, and misapplying or improperly refusing Plaintiff's mortgage payments. (Dkt.

No. 20 at 24.) Plaintiff alleges that Defendant advertises to the public via its website, which describes Defendant as one of the nation's leading specialty loan servicing companies. (*Id.* at 2.) Plaintiff further alleges that Defendant's actions in this case are representative of its treatment of other consumers. (*See id.* at 11, 19, 23–25.) Thus, Plaintiff's claims arise out of Defendant's actions taken in the course of its business and the complaint contains factual allegations concerning Defendant's advertising to the public and the breadth of its improper actions toward consumers. Plaintiff has established a plausible claim that Defendant's actions satisfy the public interest prong of his private CPA claim. Therefore, Defendant's motion to dismiss is DENIED on this ground.

### F. *Per Se* Violation of the CPA

Defendant moves for dismissal of Plaintiff's claims for *per se* violations of the CPA premised on his RESPA and FDCPA claims. (Dkt. No. 22 at 11.) "When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA . . . under state and federal law, reflecting the public policy significance of the industry." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 897 (Wash. 2009) (citing 15 U.S.C. § 1692). A violation of the FDCPA may serve as a basis for a *per se* violation of the CPA. *See id*. But time-barred claims under the FDCPA may not support a claim for *per se* violation of the CPA. *See Hoffman v. Transworld Sys. Inc.*, Case No. C18-1132-JCC, Dkt. No. 29 at 8 n.10 (W.D. Wash. 2018) (citing *Kotok v. Homecomings Fin.*, Case No. C09-0662-RSM, Dkt. No. 27 at 6 (W.D. Wash. 2009); *Bednaruk v. NW Trustee Servs., Inc.*, C09-1586-TSZ, Dkt. No. 23 at 6 (W.D. Wash. 2010); *Lyons v. Homecomings Fin. LLC*, 770 F. Supp. 2d 1163, 1167 (W.D. Wash. 2011)). As discussed above, Plaintiff's FDCPA claims arising more than one year before the filing of the complaint in this matter are barred by the FDCPA's statute of limitations. (*See supra* Section II.D.). These claims cannot support claims for *per se* violation of the CPA, *see Hoffman*, Case No. C18-1132-JCC, Dkt. No. 29 at 8 n.10, and Defendant's motion to dismiss is GRANTED as to these claims. But Plaintiff has also plausibly alleged that Defendant violated the FDCPA within one year of the

1 filing of the complaint in this action. (*See supra* Section II.D.) As these claims are not time-
2 barred, Plaintiff may proceed on his claims for *per se* violation of the CPA based on these
3 grounds. Therefore, Defendant's motion to dismiss is DENIED as to these claims.

4       The Court is not aware of a Washington state court decision holding that a violation of
5 RESPA constitutes a *per se* violation of the CPA. *See In re Bryce*, 91 B.R. 157, 186 (Bankr.
6 W.D. Wash. 2013). The majority of other jurisdictions have determined that violations of
7 RESPA and similar federal statutes are not *per se* violations of state consumer protection act
8 statutes analogous to the CPA. *See id*. at 186–87 (citing *Morilus v. Countrywide Home Loans,*
9 *Inc.,* 651 F. Supp. 2d 292, 309 (E.D. Pa. 2008) (holding that violations of the Truth in Lending
10 Act and RESPA are not *per se* violations of the Pennsylvania consumer protection act)). Plaintiff
11 has not provided legal authority supporting his assertion that his RESPA claims may support a
12 claim for *per se* violation of the CPA. (*See* Dkt. No. 20 at 25; *see also* Dkt. No. 25 at 10) (citing
13 cases stating that RESPA is a consumer protection statute). Therefore, Defendant's motion to
14 dismiss is GRANTED as to Plaintiff's claim for *per se* violation of the CPA predicated on his
15 RESPA claims.

## III. CONCLUSION

      For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim (Dkt. No. 22) is GRANTED in part and DENIED in part. Defendant's motion to dismiss is GRANTED as to: (1) Plaintiff's claim for emotional distress damages arising from his negligence and negligent misrepresentation claims; (2) Plaintiff's FDCPA claims arising more than one year prior to the filing of the complaint in this action; (3) Plaintiff's claims for *per se* violation of the CPA premised on his time-barred FDCPA claims; and (4) Plaintiff's claims for *per se* violation of the CPA premised on his RESPA claims. These claims are DISMISSED without leave to amend.

      Defendant's motion is DENIED as to: (1) Plaintiff's claims for violation of Regulation X, (2) Plaintiff's claim for pecuniary loss damages for negligent misrepresentation; (3) Plaintiff's

claim for tort damages for negligence and negligent misrepresentation; (4) Plaintiff's FDCPA claims arising within one year prior to the filing of the complaint in this action; (5) Plaintiff's private CPA claims; and (6) Plaintiff's claims for *per se* violation of the CPA premised on his timely FDCPA claims.

DATED this 19th day of March 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE